**Coreen L. SPRAGUE,
Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.**

No. 85–4198.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1986.

Decided March 18, 1987.

Rob Williamson, Seattle, Wash., for plaintiff-appellant.

Ben A. Porter, Seattle, Wash., for defendant-appellee.

Before TANG, PREGERSON and ALARCON, Circuit Judges.

TANG, Circuit Judge:

Mrs. Sprague appeals denial of widow's disability benefits contending there was not substantial evidence to support the finding of no disability, that the Secretary did not adequately consider evidence of her mental condition, and that the ALJ erred in failing to explain why he disregarded the opinions of her treating physician. We reverse.

## BACKGROUND

Mr. Sprague, a covered wage earner, died in April 1982. On June 1, 1982, Mrs. Sprague applied for widow's disability benefits under the Social Security Act. 42 U.S.C. § 402(e)(1) (1982). The Social Security Administration denied her application first on August 2, 1982 and upon reconsideration on September 20, 1983. After a hearing on March 18, 1983, the ALJ decided on September 20, 1983 that Mrs. Sprague was not disabled within the meaning of the Act. The Appeals Council denied the claim on February 23, 1984; on appeal the U.S. Magistrate recommended that the ALJ's decision be affirmed; the district court adopted that recommendation and upheld the Secretary's denial of benefits on August 19, 1985. Mrs. Sprague timely appealed.

The evidence consists of reports by two examining physicians and by Mrs. Sprague's treating physician of 25 years, as well as testimony at the hearing by Mrs. Sprague, her daughter, and a long-time friend. Mrs. Sprague has suffered from a variety of ailments over the years, including a stroke (CVA), diabetes, obesity, depression, hypertension and degenerative disc disease. The conditions of primary concern to her disability claim are her back problems and her mental state, although her treating physician stressed that in his opinion it is the combination of her numerous problems which render her completely disabled.

One of the examining physicians, Dr. Shibata, stated that Mrs. Sprague had a herniated disc and that she "appears to be most disabled by disc disease and is unable to be gainfully employed due to her low back problems."

The other examining physician, Dr. McCornack, an orthopedic surgeon, discussed her variety of medical problems including degenerative disc disease without signs of herniation, nerve root compression or spinal stenosis. In his opinion Mrs. Sprague could not do any strenuous work but, with retraining, could do a variety of sedentary work activities.

Dr. Gehlen, Mrs. Sprague's family doctor, gave his opinion that Mrs. Sprague's physical back problems coupled with her pain and depression render her completely disabled. In his view, her pain and motion limitations are equal, in terms of functional limitations, to those listed in Listing of Impairments 1.05,[1] especially when one takes into consideration her depression.

Testimony at the hearing brought out the effect of the various ailments and of her mental state on Mrs. Sprague's daily life. Her daughter reported Mrs. Sprague had attempted suicide; both her daughter and her friend testified to her depression, listlessness, inability to maintain concentration, and the pain caused by walking and standing. Mrs. Sprague testified to the pain in her back and in her arm (from a whiplash injury) and the degree that pain interfered with her efforts to attend typing classes; that it necessitated frequent

---

1. § 1.05 lists various disorders of the spine and the accompanying clinical findings necessary to find each: A. Arthritis; B. Osteoporosis; and C. Other vertebrogenic disorders.

breaks to walk around to gain relief from the pain from sitting in one place.

The ALJ considered the medical history of Mrs. Sprague's back pain and disc disease, and found that she can walk 2 or 3 blocks and up to one mile at a slow pace and that she can sit for up to an hour if she can change position periodically. Thus, although she experiences pain, he found she is not incapacitated by her difficulties in walking, sitting or standing.

The ALJ addressed specifically the view of her family doctor that Mrs. Sprague is disabled. He noted two apparent discrepancies in the evidence: (1) that Dr. Gehlen gave a diagnosis of arthritis while the orthopedic surgeon gave a diagnosis of degenerative disc disease without evidence of root compression or disc herniations; and (2) that Dr. Gehlen referred to Mrs. Sprague's pain in her arm from her whiplash injury, while Mrs. Sprague discussed her efforts to learn to type and operate a 10–key.

The ALJ concluded from "the record medical evidence" that Mrs. Sprague suffers from degenerative disc disease without nerve root compression or spinal stenosis, as well as diabetes, tension headache, hypertension and poststatus CVA. He determined that none of these impairments meets or equals those listed as defining disability, when viewed in light of "her clinically documented sedentary level of work activity."

The magistrate concluded the evidence was, at best, conflicting as to whether her lower back problems were the same as or equivalent to any listed in the regulations for disorders of the spine. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.05. Her treating doctor said her condition is equivalent without specifying a subsection of § 1.05, while Dr. McCornack said, with retraining, she could do sedentary work, thus supporting the contrary view that her condition is not equivalent to a listed disorder. The magistrate recommended that, given the conflict, the ALJ may resolve it and the court must uphold his decision.

The magistrate also found that Mrs. Sprague had presented no psychiatric or other qualified evidence to establish entitlement to disability based on her mental state.

## DISCUSSION

### A. *Legal Standards*

■ It is clear that a widow must satisfy a stricter disability standard than a wage earner. *See, e.g., Dorton v. Heckler,* 789 F.2d 363, 365 (6th Cir.1986). A widow of an insured wage earner is entitled to benefits under 42 U.S.C. § 402(e) (1982) if she is between 50 and 60 years old and is under a disability which "under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in *any* gainful activity." 42 U.S.C. § 423(d)(2)(B) (1982) (emphasis added). The pertinent regulations specify that only physical or mental impairments are considered and that the department does not consider age, education or work experience. 20 C.F.R. § 404.1577 (1985).[2] Benefits are granted when "specific clinical findings" show that a widow suffers from an impairment listed in Appendix 1 or from one or more unlisted impairments that singly or in combination are "medically equivalent" to a listed impairment. 20 C.F.R. § 404.1578 (1985); *Dorton,* 789 F.2d at 365.

It is not disputed that Mrs. Sprague is the widow of an insured wage earner and that she is between 50 and 60 years old. The only question in this case is whether Mrs. Sprague's ailments are the equivalent of a listed impairment, thus qualifying her for benefits. We agree with Mrs. Sprague that substantial evidence does not support the ALJ's and Secretary's decision to deny benefits.

■ The scope of review of disability determinations is limited and we will disturb the Secretary's decision only if it is based on legal error or if the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *Cotton v. Bowen,* 799 F.2d 1403, 1406 (9th Cir.1986); *Howard v. Heckler,* 782 F.2d 1484, 1486–87

**2.** The same regulations were in effect at the time Mrs. Sprague initiated her claim.

(9th Cir.1986). Substantial evidence means "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Howard*, 799 F.2d at 1487 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

### B. *Treating Physician's Opinion*

Mrs. Sprague does not contend that she suffers from a listed impairment. While her back disorder involves symptoms close to those listed for vertebrogenic disorders, the clinical findings do not show that she has "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." Appendix 1, § 1.05 C.2. Mrs. Sprague argues, however, that she suffers an impairment equivalent to a listed impairment when the disabling effects of her other pain (in her arm and from tension headaches), her hypertension, and her depression are considered. This is her treating physician's opinion.

All three physicians' underlying medical findings on her physical ailments were similar, although Dr. Shibata thought Mrs. Sprague had a herniated disc, a conclusion not supported by the other two. Both Dr. Gehlen, her treating physician, and Dr. McCornack, an orthopedic surgeon, found she suffered from degenerative disc disease. Their opinions differed only as to her degree of impairment in that Dr. Gehlen said she is totally disabled and Dr. McCornack said she is capable, with retraining, of sedentary work.

This is not a case of contradictory evidence of a physical impairment, but one in which a treating physician's opinion on the ultimate question of the degree of impairment differs from that of an examining physician who made no observation of the claimant's mental state. The ALJ apparently decided that Dr. McCornack's opinion that Mrs. Sprague could do sedentary work with training was more convincing than Dr. Gehlen's opinion that she is totally disabled.

The general rule is that conflicts in the evidence are to be resolved by the Secretary, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982), and that the Secretary's conclusion must be upheld where there is more than one rational interpretation of the evidence. *Allen v. Heckler*, 749 F.2d 577 (9th Cir.1984). But when the conflict is between the opinions of a treating physician and an examining physician it is the rule in this circuit that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Murray*, 722 F.2d at 502 (citing *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir.1983)).

In this case, the ALJ concluded that Mrs. Sprague's impairments do not meet or equal those defining disability when viewed in light of her "sedentary level of work activity." This conclusion is not supported by substantial evidence both because there is no affirmative evidence that Mrs. Sprague ever engaged in any work activity at all, and because there are no specific reasons given for disregarding Dr. Gehlen's contrary opinion.

We can find only two indirect indications of the ALJ's evaluation of Dr. Gehlen's testimony: (1) reference to Dr. Gehlen's diagnosis of arthritis, which was apparently not supported by the examining physicians; and (2) reference to Dr. Gehlen's assessment of the pain Mrs. Sprague suffered which the ALJ did not believe was consistent with Mrs. Sprague's efforts to learn to type. These comments are totally inadequate as a statement of reasons for disregarding a treating physician's opinion, especially when, as here, all the physicians diagnosed degenerative disc disease. We fail to see the significance of the purported inconsistencies, and mere reference to them does not satisfy the requirement of *Murray*, 722 F.2d at 502, that the ALJ set forth "specific, legitimate reasons" for dis-

regarding the treating physician's opinion. Because the ALJ did not state reasons based on substantial evidence, we reverse the decision to deny benefits.

## C. Evidence of Mental Condition

A second ground for reversal is that the ALJ stated no reasons for ignoring the substantial evidence of Mrs. Sprague's mental state and its impact on her ability to work. The only conflict in the medical opinions in this case has to do with the disabling impact of Mrs. Sprague's pain and mental condition when they are considered in conjunction with her physical ailments. Dr. Gehlen's and Dr. McCornack's opinions do not actually conflict because only Dr. Gehlen offered evidence of Mrs. Sprague's mental state and its cumulative effect on her overall ability to function. The case is thus not one of conflicting medical viewpoints but one in which differing opinions "are not drawn from the same facts." *Beecher v. Heckler,* 756 F.2d 693, 695 (9th Cir.1985) (quoting *Dressel v. Califano,* 558 F.2d 504, 508 n. 6 (8th Cir. 1977).

The Secretary argues that Dr. Shibata made a "detailed examination" of Mrs. Sprague's mental condition and noted her mental status as normal, thus providing substantial evidence contrary to Dr. Gehlen's findings. We do not consider this cursory observation, made during one physical examination, to constitute substantial evidence. Because it conflicts with the findings of the physician who knew and treated Mrs. Sprague for 25 years, the ALJ could accept Dr. Shibata's conclusion only if he stated specific reasons for rejecting her treating physician's opinion as required by *Murray,* 722 F.2d at 502.

The ALJ not only failed to give reasons for disregarding Dr. Gehlen's opinion, he failed even to mention the other evidence of Mrs. Sprague's mental condition. The ALJ said only that under 20 C.F.R. § 404.-1508 a physical or mental impairment must be established by medical evidence and an unsubstantiated statement of symptoms by the claimant cannot determine the ultimate legal issue of disability. This conclusory statement will not suffice.

The statements Mrs. Sprague made about her mental and physical limitations and about her pain and depression are not mere unsubstantiated statements of symptoms. First, there is medical evidence of conditions which would normally produce pain, and the ALJ may not choose to disbelieve Mrs. Sprague's testimony unless he makes specific findings justifying that decision. *Cotton,* 799 F.2d at 1407; *Miller v. Heckler,* 770 F.2d 845, 848 (9th Cir.1985); *Murray,* 722 F.2d at 502.

Second, there is medical evidence of Mrs. Sprague's mental state which substantiates her own testimony. The Secretary argues that the ALJ did not have to state reasons for disregarding evidence of Mrs. Sprague's mental state because no competent evidence was offered since Dr. Gehlen "has not identified himself as a psychiatrist." This would appear to be the basis of the magistrate's brief conclusion that "no psychiatric or other qualified evidence" was introduced to support a claim of mental disorder under § 12.04 of Appendix 1, "Functional Nonpsychotic Disorders." This conclusion is clearly erroneous. We emphasize that even if her symptoms fail to meet or equal those of a listed mental disorder, the ALJ must consider the effect of her mental state on her physical ability to perform gainful activity. *Beecher,* 756 F.2d at 694. As we indicated in *Beecher,* 756 F.2d at 694–95, "[b]ecause a person's ability to engage in gainful employment is dependent upon both physical and psychological capabilities, ... '[a] claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects.'" (quoting *Dressel,* 558 F.2d at 508).

We believe there was both psychiatric and other qualified evidence of Mrs. Sprague's mental state. The evidence introduced included her treating physician's opinion of her mental state as well as Mrs. Sprague's testimony and that of her friend and her daughter. This medical opinion and lay testimony constitutes qualified evi-

dence which the ALJ must address on remand.

If the Magistrate's conclusion that there was no psychiatric evidence is based on an assumption that such evidence must be offered by a Board-certified psychiatrist, it is clearly erroneous. There is no such requirement in the regulations. Under general principles of evidence law Dr. Gehlen is qualified to give a medical opinion as to Mrs. Sprague's mental state as it relates to her physical disability even though Dr. Gehlen is not a psychiatrist. *Heinze v. Heckler*, 581 F.Supp. 13, 14 (E.D.Pa.1983), (citing *Alvarado v. Weinberger*, 511 F.2d 1046, 1049 (1st Cir.1975); accord *Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir. 1985).

Dr. Gehlen is a duly licensed physician and as such, under the laws of most states, including the claimant's state of Washington, he can practice and render psychiatric services, *i.e.*, prescribe psychotropic medication, conduct psychotherapy, etc. Wash.Rev.Code § 18.71.011 (defining the practice of medicine); Joseph T. Smith, M.D., *Medical Malpractice: Psychiatric Care* 576 (1986). While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry, Smith, *supra* at 576, it is well established that primary care physicians (those in family or general practice) "identify and treat the majority of Americans' psychiatric disorders." C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D., and H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners*, 142:1 Am.J. Psychiatry 52 (Jan.1985).

Not only is Dr. Gehlen permitted by state law and professional custom to practice psychiatry, by virtue of his treatment of Mrs. Sprague's condition, including the prescription of psychotherapeutic drugs, he in fact was practicing psychiatry. Thus his evidence is medically acceptable. 20 C.F.R. § 404.1513(a)(1). Dr. Gehlen's opinion is competent psychiatric evidence, based on his clinical observations of Mrs. Sprague's depression. " 'Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings.' " *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.1985) (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975)).

Dr. Gehlen referred in his March 15, 1983 letter to her depression, characterized by "weight loss due to lack of appetite, tension headaches, sleep loss, nightmares and upset stomach." In another letter on January 24, 1984, which was not available to the ALJ, but was available to the Appeals Council, Dr. Gehlen stated that her depression had worsened, requiring antidepressant medication and resulting in decreased activity and ability to care for herself, as well as increased thoughts of suicide.

■ We also believe that the testimony of Mrs. Sprague's daughter and friend is fully competent to substantiate her doctor's diagnosis of depression. Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2). Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence. *See, e.g., Bilby*, 762 F.2d at 719 n. 3.

## CONCLUSION

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court. *Stone v. Heckler*, 761 F.2d 530 (9th Cir.1985). Because we are convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion of the combined cumulative effect of Mrs. Sprague's impairments we reverse and remand for payment of benefits. *See Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir.1985).

REVERSED and REMANDED.