**Dennis A. DUYCK, Plaintiff,**

v.

**Shirley S. CHATER,[1] Commissioner, Social Security Administration, Defendant.**

**Civ. No. 95–357–FR.**

United States District Court, D. Oregon.

Nov. 30, 1995.

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 206(d) of Pub.L. No. 103–296, Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. No further action need be taken to continue this suit. *Id.*

David B. Lowry, Portland, Oregon, for Plaintiff.

Kristine Olson, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, Oregon, Kathryn A. Warma, Special Assistant United States Attorney, Social Security Administration, Seattle, Washington, for Defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the appeal of the plaintiff, Dennis A. Duyck, from the decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for a period of disability and disability insurance benefits. Duyck brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner.

## BACKGROUND

The application of Dennis A. Duyck, for a period of disability and disability insurance benefits was filed on July 30, 1993. The application was denied initially and upon reconsideration. Duyck then requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before the ALJ on July 11, 1994. By decision dated October 19, 1994, the ALJ denied Duyck's claim. The Appeals Council denied Duyck's request for review.

Duyck contends that he became disabled on September 10, 1992 because of back problems and carpal tunnel syndrome. He was fifty-four years of age at the time that he claims he became disabled and fifty-six years of age at the time of the administrative hearing.

The ALJ has recited the following facts which are not in dispute:

Mr. Duyck is a 56–year–old man with a limited 11th grade education and relevant work experience as a welder and bus mechanic. He has not engaged in any substantial gainful activity since September 10, 1992, although he attempted to work for approximately three days in July 1993....

Mr. Duyck testified that he first injured his back falling out of a tree when he was a youngster. He stated that his back was causing him more problems within the last one or two years. He is sometimes uncomfortable at night, and in the morning he hobbles around the house at first. He doubts he could return to any of his previous work as a welder. He stated that the majority of weights he lifted in that work were under 25 pounds, but he feels unable to do the prolonged standing required of such work. He estimated his ability to stand at one time at about 15 minutes, and he stated that he can walk two or three city blocks without a break. He is able to sit for up to two to three hours. He continues to go trout fishing and he mows his lawn with a riding mower. [A friend] testified that the claimant frequently holds onto the wall while walking. She has also observed him shaking his left hand when it is painful, and she stated that the claimant moans and groans a lot.

Medical records show the claimant has some degenerative disc disease at multiple levels of the lumbar spine with lumbar spondylosis, demonstrated both on plain x-rays and on a bone scan taken in April 1994. Estimates of the functional impact of his condition vary widely in the record. A limited evaluation of the low back in November 1991 yielded no objective findings of significant lumbar disease. Specifically, the claimant had a completely normal straight leg raising, normal deep tendon reflexes, and relatively normal strength in the lower extremities. Overall, the disability with respect to his back pain was deemed minimal.

In January 1993, the claimant told an examining osteopath that his low back pain was sometimes precipitated just by sitting for 30 minutes, sometimes by lifting more than 30 to 40 pounds, and just as often was unrelated to activity at all. This examiner found only slight limitation in the lumbar range of motion, with a normal neurosensory examination. He felt the claimant's chronic low back pain was probably due to osteoarthritis. He recommended nonsteroidal anti-inflammatory medication as well as a weight reduction program, since the claimant had gained about 45 pounds in the last five years. The osteopath commented that the claimant did not appear highly motivated to get better. [A consulting orthopedist] evaluated the claimant in August 1993, finding no specific functional limitations. He added that, subjectively,

excessive use of the left wrist might likely elicit some of the symptomatology of his carpal tunnel, where the claimant had undergone surgery at sometime in the past. He added that the symptoms would only be minimal. [He] also stated that the claimant's low back pain would likely improve with weight loss, strengthening, and avoidance of heavy lifting or standing. He emphasized, however, that no objective evidence was present for the claimant's complaints.

[Dr. Thompson, an orthopedist,] is the physician who found the degenerative disc disease at multiple levels of the claimant's lumbar spine with lumbar spondylosis on x-rays in April 1994. He added that there was moderate functional overlay manifested by a positive Waddell's nonorganic sign test. Dr. Thompson commented that the claimant certainly had significant lumbar spondylosis and degenerative disc disease that could be the major reason for his low back pain. He concluded that the claimant was probably not employable in any heavy type of work. Dr. Thompson added that, with his sitting intolerance and standing intolerance, it was doubtful that he was employable at any substantive type of employment.

On November 16, 1993, the claimant caught his left little finger in a band saw, lacerating his deep flexor tendon and both digital nerves. [Surgery] achieved "a strong repair".... By January 18, 1994, Dr. Combs [the surgeon] ... saw nothing objective in the claimant's examination that would prevent him from returning to his regular work duties. However, Mr. Duyck was stating that his grip was weaker and he was unable to hold the machinery he used in his welding. Dr. Combs recommended a physical capacity evaluation so that true limits on his function could be evaluated. The results of that evaluation ... indicated that Mr. Duyck was functioning in the medium to heavy range of physical demands. The activities most limiting to his performance and related to his injury included tolerating the vibration and sustained grasping associated with job-related tasks of hammering and grinding. With the use of gloves and a built-up foam handle to absorb a portion of the vibration, it was felt that Mr. Duyck could likely return to his work at injury.

TR 15–17 (citations to exhibits omitted).

On October 19, 1994, the ALJ issued a decision finding that Duyck's impairments do not prevent him from performing his past relevant work, and that Duyck was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. Duyck now appeals from that decision.

## CONTENTIONS

Duyck contends that the ALJ improperly rejected the opinion of Duyck's "treating physician," Dr. Thompson; that the ALJ unfairly characterized Duyck's ability to perform various activities such as lawn mowing and "tinkering" in his shop as evidence of a lack of a significant impairment; and that the ALJ gave undue credence to the physical capacities examination when there was no adequate foundation to support its validity and reliability.

The Commissioner contends that the decision of the ALJ was based on substantial evidence, and that Duyck did not meet his burden of proof. The Commissioner states: (1) that Dr. Thompson was not a "treating physician" but rather examined Duyck on one occasion and only for the purpose of establishing his qualification for disability benefits, and that the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Thompson; (2) that the ALJ did not improperly reject Duyck's complaints of excess pain because the ALJ stated specific and legitimate reasons for discounting his complaints of excess pain; and (3) that Duyck has not shown that the physical capacity examination contained any bias, inaccuracy or other flaw which would render it not worthy of consideration.

## APPLICABLE LAW

 The court will uphold the decision of the ALJ provided that the findings of the ALJ are supported by substantial evidence and the ALJ applied the correct legal standards. *Drouin v. Sullivan,* 966 F.2d 1255,

1257 (9th Cir.1992). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

A claimant's disability is evaluated following a five-step sequential evaluation set out in 20 C.F.R. § 416.920(a). The first step is to determine whether the claimant engaged in substantial gainful activity after the date of the most recent unfavorable determination. The second step is to determine whether the claimant has a "severe" impairment. The third step is to determine whether the impairment of the claimant is listed in or medically equivalent to an impairment listed in Appendix 1 of the disability regulations. The fourth step is to determine whether the impairment prevents the claimant from returning to the claimant's past relevant work. The final step is to determine whether the Commissioner has carried the burden of showing that a claimant who cannot return to past relevant work can nonetheless perform in the claimant's regional economy, in the national economy, or both.

## ANALYSIS AND RULING

The ALJ applied the proper sequential evaluation as required by 20 C.F.R. § 416.920(a). Duyck does not contest the findings of the ALJ with regard to the first three steps of the sequential evaluation. At issue is the fourth step in which the ALJ found that Duyck had retained the residual functional capacity to perform work-related activities except for work involving the lifting of more than fifty pounds occasionally or twenty-five pounds more frequently, and that he also required the use of gloves and a built-up foam handle to absorb a portion of the vibration associated with the job-related tasks of hammering and grinding.

■ Duyck argues that the ALJ did not properly weigh the opinion of Dr. Thompson under the "treating physician" rule. Duyck points out that the law affords the opinion of a treating physician in a disability case greater weight because " 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' " *Ma-*

*gallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989), quoting *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes,* 881 F.2d at 751 (citation omitted). Where the opinion of the treating physician conflicts with that of an examining physician, the ALJ must " 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' " *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987) (quoting *Sprague,* 812 F.2d at 1230).

Dr. Thompson's one-time examination of Duyck does not qualify him as a "treating physician." However, even if Dr. Thompson is deemed a treating physician, given the fact that his opinion was contradicted by all of the other examining physicians, the ALJ's reasons for rejecting his opinion were sufficient:

> The consensus of medical opinion is that the claimant's overall disability with respect to his back pain is minimal. Dr. Thompson's contrary reference to the claimant's "sitting intolerance and standing intolerance", in concluding that the claimant was unemployable at any substantive type of employment, appears to be based on Mr. Duyck's subjective complaints alone. Furthermore, Dr. Thompson does not assess the degree to which his own findings of moderate functional overlay impact on his assessment. Since Dr. Thompson's opinion is strongly at odds with those of the remaining physicians who have examined the claimant, and since it appears to be based on the claimant's subjective complaints, I reject his assessment.

TR 17 (citation to exhibit omitted).

■ Duyck also contends that the ALJ improperly rejected his complaints of "excess pain." The ALJ stated the following reasons for rejecting Duyck's claims of "excess pain":

> Mr. Duyck's allegations regarding chronic pain and functional limitations related to his back impairment and hand impairment have been substantially discounted for a

number of reason [sic]. The first and most compelling reason is the consistent lack of objective clinical findings to substantiate the level of limitation which he alleges. The consensus of medical opinion is that the claimant's overall disability with respect to his back pain is minimal.... Second, the claimant's reported daily activities are highly inconsistent with the level of limitation which he alleges. These activities include lawn work, tuneups and other "tinkering" with vehicles, driving, shopping, and trout fishing. His activities also apparently include a significant amount of quite strenuous activity.... Third, the claimant takes no prescribed pain medications, relying instead on over-the-counter medications.

TR 17.

The court finds these reasons to be legitimate, specific reasons for the ALJ to reject Duyck's claims of excess pain and that these reasons are supported by substantial evidence in the record.

██ Finally, Duyck challenges the validity and reliability of the work capacity evaluation. The work capacity evaluation was requested by Duyck's hand surgeon, Dr. Combs, in order to determine whether Duyck was ready to return to his former work duties.

The work capacity evaluation showed that Duyck was capable of a "Medium–Heavy range of physical demand." TR 227. The evaluation also noted, however, that the "activities which were most limiting to this worker's performance and are related to this injury, include tolerating the vibration and sustained grasping associated with the job related tasks of hammering and grinding." *Id.*

Nothing in the record contradicts this evaluation. As the Commissioner states, Duyck does not point out any inaccuracies or flaws in the evaluation which would render it unworthy of due consideration. In conclusion, the record shows that the ALJ used the work capacity evaluation as only one piece of evidence in his findings and did not give improper consideration to the work capacity evaluation.

## CONCLUSION

The decision of the Commissioner is supported by substantial evidence. That decision is affirmed.