107 F.3d 878
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bette SCHILLING, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner, Social Security
Administration, Defendant-Appellee.
 No. 95-35895.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 8, 1996.*
Decided March 3, 1997.
 
 Before: CANBY, RYMER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bette Schilling appeals from the district court's judgment affirming the Commissioner's determination that she is not disabled. The district court had jurisdiction under 42 U.S.C. § 405(g), we have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.
 
 
 3
 * We review the district court's grant of summary judgment de novo. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989). We will uphold the Commissioner's decision unless "it is not supported by substantial evidence or it is based on legal error." Green v. Heckler, 803 F.2d 528, 529 (9th Cir.1986); see 42 U.S.C. § 405(g).
 
 
 4
 The ALJ should generally give more weight to the opinion of a treating physician than to that of an examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.1995). When doctors' opinions conflict and the ALJ rejects a treating physician's assessment, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987). A nontreating physician's clinical tests can be substantial evidence, and the ALJ may resolve disagreements among doctors. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984).
 
 II
 
 5
 Schilling argues that the ALJ erroneously relied on the residual functional capacity assessment of Dr. McLafferty, who considered only her vascular problems, and improperly rejected the disability opinions of Drs. Nilaver, MacRitchie and von Hippel without giving permissible reasons for doing so. She also contends that the ALJ lacked clear and convincing reasons for rejecting her own testimony.
 
 
 6
 The ALJ found that Schilling had not engaged in substantial gainful activity since October 2, 1991, and that she had severe musculoskeletal and peripheral vascular impairments; but that neither individually nor in combination did her impairments meet or equal the listings in Appendix I. In doing so, the ALJ found Schilling's testimony to be believable; credited the assessment of one treating physician that Schilling was restricted to modified sedentary exertion, is unable to engage in prolonged standing or walking, has difficulty climbing and has to shift position frequently; rejected a treating neurologist's assessment of her residual functional capacity; and deferred to the assessment of a vascular specialist who the ALJ found had treated Schilling, was most familiar with her major medical problems, and was most qualified to offer an opinion regarding her physical limitations and residual abilities.
 
 
 7
 Nilaver was a treating neurologist at the Oregon Health Sciences University. The ALJ rejected Nilaver's assessment because it was not accompanied by a narrative summary explaining severe restrictions that would limit Schilling to three hours work, and because it was inconsistent with the doctor's earlier comments that a myelogram and other tests showed Schilling's lumbar spine essentially normal other than arachnoid cysts, with normal motor strengths and reflexes, and complaints mainly related to claudication pain. Nilaver's March 5, 1993 notes indicate prior diagnosis of arthritis, fibrositis, and degenerative disease of the spine; claudication symptoms indicative of vascular insufficiency (documented on her angiogram); worsening pain such that she cannot sit for prolonged periods of time or walk even short distances; but an essentially normal myelogram and a CT scan showing a very mild concentric disc bulge at L3-L4. Her clinical evaluation was remarkable for sciatica with paravertebral muscle tenderness and spasm, but with no evidence of significant impairment of motor strength or reflexes. His March 12 notes report no need for another MRI or CT or laminectomy based on an EMG and NCV. In Nilaver's October 29, 1993 assessment, he opined that Schilling was able to sit, stand and walk a total of one hour each, can occasionally lift up to 10 pounds, can't use her hands for pushing and pulling, cannot bend or climb, and can only occasionally reach.
 
 
 8
 After the ALJ's determination, but before the Appeals Council declined to reconsider it, Schilling submitted two letters from Nilaver in which he summarizes his opinion about Schilling's condition. He concludes that Schilling has claudication pain, low back pain and sciatica, despite the observation that no surgically correctable lesions were detected on her MRI; that she also has pain in her joints and shoulders and arms (having previously been diagnosed to have fibrositis and arthritis); and that despite the fact that her myelogram and other tests show her lumbar spine to be essentially normal, her pain symptomatology is multi-factorial. The Appeals Council acknowledged the narratives, but observed that they include no new clinical findings.
 
 
 9
 MacRitchie gave Schilling a neurological and physical examination in February 1992, which was "essentially normal, but the distribution of her pain and quality is very much like a piriformis syndrome or right L5 radiculopathy." Subsequent treatment notes reflect that electrodiagnostic studies showed no evidence of radiculopathy. MacRitchie believed that Schilling had piriformis syndrome superimposed on underlying fibrosistis, and advised Schilling to return to work four hours per day broken up into 1/2 hour periods of sitting, standing, and walking. Essentially the same recommendation was made in late March.
 
 
 10
 Von Hippel treated Schilling from October 1991 at least through June 1992 for panic disorder and depression. Both subsided. However, on June 12, 1992 she said that Schilling had been disabled from gainful employment and would continue to be unless the causes for her back and leg pain were eliminated.
 
 
 11
 McLafferty was a resident in the Department of Vascular Surgery at OHSU, where Schilling was involved in several research studies having to do with peripheral arterial disease. McLafferty's letter indicates that Schilling has never had an angiogram but that her vascular laboratory tests indicate that she does not have more than 50 percent drop in systolic blood pressure at the ankle with exercise and no more than 10 minutes to recovery time to the pre-exercise level. His assessment indicates that Schilling could sit for six hours, stand for two and walk for two; could lift up to 50 pounds and reach, bend and climb occasionally; and had no limitations in grasping, pushing and pulling.
 
 
 12
 We have no difficulty concluding that the ALJ was entitled to disregard von Hippel's conclusory opinion on disability, because the record indicates that she treated Schilling only for panic and depression (which were essentially cured and were not a factor in her disability claim) and not for the other impairments, which Schilling alleged were disabling. For those conditions Schilling had consulted nearly a dozen specialists whose notes and opinions were part of the record. In any event, the ALJ did accept the specific limitations that von Hippel identified.
 
 
 13
 The ALJ also gave no explanation for disregarding MacRitchie's opinion. While her notes are ambiguous as to whether Schilling could work full time after April 1992, they do reflect MacRitchie's view that Schilling should work no more than four hours a day in a light duty job that allowed movement. Although it speaks to a somewhat different timeframe, this is a treating physician's opinion that is generally consistent with Nilaver's and inconsistent with McLafferty's.
 
 
 14
 Rejecting Nilaver's assessment is the most troubling, as he treated Schilling for pain. The absence of a narrative statement makes the task of interpreting clinical data, and determining whether an assessment of residual functional capacity is credible, more difficult.[1] Nevertheless, Nilaver's clinical notes record Schilling's diagnoses to date and describe her "worsen[ing]" condition in terms that are not inconsistent with the earlier assessments of MacRitchie and Innes, to which he had access. Therefore, the absence of a narrative statement, in and of itself, is not a legitimate reason for rejecting Nilaver's assessment as a treating physician.
 
 
 15
 More significantly, the ALJ rejected Nilaver's assessment because he found that it was inconsistent with objective tests that Nilaver himself opined showed a normal lumbar spine, other than arachnoid cysts, with normal motor strengths and reflexes, and with Schilling's main complaint being related to claudication pain. Since the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusions," Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)), we cannot say that the ALJ erred in rejecting Nilaver's assessment to the extent that it related to neurological, back, or joint pain.
 
 
 16
 However, the ALJ gave no reasons for rejecting Nilaver's assessment to the extent that it related to Schilling's claudication pain and her impairments as a whole. Nilaver's clinical notes reflect claudication pain, the fact that other physicians had diagnosed her to have arthritis, fibrositis and degenerative disease of the spine, and continual worsening of her pain. Schilling's testimony, which the ALJ credited, is to the same effect.
 
 
 17
 Instead, the ALJ deferred to McLafferty's assessment. Although we must uphold the ALJ's interpretation if it is susceptible to more than one rational interpretation, Magallanes, 881 F.2d at 750, there must be some reasonable basis for deferring to McLafferty. There is no evidence that McLafferty was, as the ALJ apparently assumed, a treating physician, or that he or the OHSU Division of Vascular Surgery were concerned with Schilling's non-vascular impairments. Likewise, the laboratory reports to which McLafferty's letter refers are related only to Schilling's vascular problems. Thus, there is no substantial support in the record for the ALJ's decision to defer to McLafferty's assessment and to reject Nilaver's.
 
 
 18
 Since in these circumstances we must credit Nilaver's opinion as a treating physician, Lester, 81 F.3d at 834, Schilling is limited to three hours work per day. That is not substantial gainful employment. Kornock v. Harris, 648 F.2d 525, 527 (9th Cir.1980); see 42 U.S.C. § 423(d)(1)(A), -(2)(A). Even though Schilling's own testimony suggests that she may have been less limited than Nilaver thought, because the ALJ did not give reasons based upon substantial medical evidence for rejecting the treating physician's opinion, Schilling was disabled "as a matter of law." Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir.1989).
 
 
 19
 We therefore reverse and remand with instructions to find Schilling disabled beginning October 2, 1991 through the date of the hearing.
 
 
 20
 REVERSED AND REMANDED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 21
 I respectfully dissent. In my view, the trier of fact could reasonably have reached either conclusion, and had a substantial basis on the whole record for reaching the conclusion he did. Under Magellanes v. Bowen, 881 F.2d 747 (9th Cir.1989), the ALJ could properly reject Dr. Nilaver's conclusion, because the objective tests and the opinions of the other physicians contradicted it. Dr. Nilaver offered a "multi-factorial" explanation of appellant's symptoms, and a conclusion that Schilling was disabled. Other physicians offered opinions based on objective findings, and stated that Schilling was experiencing pain but was not disabled.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 As the Appeals Council observed, the narrative statements that Nilaver did submit, after the ALJ's decision, added little because they were not based on new clinical evidence