**Rodney STRAUSS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.**

**No. Civ.A. 98–922–FR.**

United States District Court,
D. Oregon.

April 28, 1999.

David B. Lowry, Portland, OR, for plaintiff.

Kristine Olson, United States Attorney, William W. Youngman, Assistant United States Attorney, Portland, OR, Richard

Buckley, Special Assistant United States Attorney, Seattle, WA, for defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Rodney Strauss, filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review and set aside the final decision of the Commissioner of Social Security (the "Commissioner") who denied his application for social security disability insurance benefits.

## PROCEDURAL BACKGROUND

Rodney Strauss filed an application for Supplemental Security Income benefits and disability insurance on November 22, 1994, with a protective filing date of September 27, 1994. Strauss contends that he became disabled on December 18, 1993 due to migraine headaches and carpal tunnel syndrome, as well as pain in his back, neck and legs. The application was denied on March 23, 1995. Strauss' request for reconsideration was denied on August 21, 1995; thereafter, Strauss filed a request for a hearing, which was held before an administrative law judge ("ALJ") on August 29, 1996. The ALJ denied the request for reconsideration of Strauss on October 17, 1996. The Appeals Council declined to review the ALJ's decision. Strauss then filed this action for review on July 21, 1998.

## FACTS

Rodney Strauss was 38 years old at the time of the administrative hearing. He is the single parent of four children. He has a high school diploma with some insignificant post-high school classes. His relevant work experience includes equipment maintenance technician and bowling alley mechanic. Strauss has not engaged in any substantial gainful activity since December 28, 1993. Strauss alleges disability because of migraine headaches, carpal tunnel syndrome, and back, neck and leg pain.

1. *Testimony*

Rodney Strauss testified that he has had three on-the-job back injuries since 1984; that he cannot bend down; and that he cannot enjoy hunting, fishing, or playing with his children because these activities risk throwing his back out for two to eight days. Regarding his wrists, Strauss testified that he had carpal tunnel surgery in 1980 and began to wear wrist braces in 1995. Strauss stated that his left knee and his neck also bother him, and that he has high blood pressure which causes headaches one or two times a week which last for two or three days each. On a range from zero to ten, with ten being the most intense pain, he rates his headaches anywhere from three to ten. Strauss testified that he has muscle cramps in his back, wrists and neck that can last up to a week. During this time, he cannot move his head. Strauss testified that the pain also interferes with his sleep. He claims that he has problems with dizziness and is only able to climb a flight of stairs at a slow pace. Strauss testified that he rests frequently during the day and takes a couple of naps daily three or four days of the week. These naps last a half an hour to an hour and a half. He says that he is able to walk for two blocks without stopping to rest, and he is able to stand for twenty minutes without taking a break. Strauss testified that he spends half of his waking time lying down or reclining. He contends that he must elevate his feet to relieve pressure on his back and legs for a few minutes a couple of times a day; and that he has difficulty maintaining his balance on a flat surface due to dizziness, and therefore stooping over, crouching, kneeling, crawling, reaching for things, moving machinery, and riding in a car for any substantial distance are activities that he cannot do. Strauss testified that he has pain caused by ulcers; and that the knee and wrist pain from which he suffers ranges on a scale of zero to ten, with ten being the worst pain. He testified that

forty to fifty percent of the time, his pain is at a level eight, nine or ten. Strauss stated that he discontinued his medications because he could not function around the house and with his children when he took them. He usually stays home, but he does take his children on errands. He ordinarily does not cook. Strauss testified that his children do the household chores, with Strauss helping five to ten percent of the time.

Lorraine Strauss, the mother of Rodney Strauss, testified that she sees Strauss two or three times a week. She testified that Strauss had difficulties with walking or using his arms or hands. She testified that he has low energy and chronic pain. Lorraine Strauss testified that her son was at fifty percent of normal as to pace. She stated that he was depressed, sometimes staying in his bedroom and sleeping all day long.

### 2. *Medical Evidence*

Rodney Strauss underwent carpal tunnel surgery in 1980. Strauss reports that he injured his lower back in 1982, 1984 and 1987.

On December 14, 1987, Donald J. Paluska, M.D. examined Strauss and concluded that his gait and posture were normal. Dr. Paluska found no evidence of muscle spasms in Strauss' back. Dr. Paluska's medical impression was that Strauss had recurrent, acute back strain and spondyloysis. This diagnosis was confirmed by a CT scan. Strauss reported to Dr. Paluska that he had injured his back at work while lifting someone from the floor.

On June 20, 1990, John D. DiPaola, M.D. reported that Strauss was medically stationary, and that a physical examination had failed to substantiate Strauss' claims of chronic pain.

From May 4, 1994 through November 3, 1994, Cheryl B. Hickethier, M.D. treated Strauss for a knee injury sustained while he was playing ball with his sons. Strauss also reported headaches and back pain. Although Strauss complained of his inability to work, Dr. Hickethier was of the medical opinion that Strauss was able to return to work.

On August 29, 1994, Robert J. Wilson, M.D. examined Strauss and reported that there was no medical reason why Strauss could not return to his former employment.

On October 31, 1994, Mai Huynh, M.D. examined Strauss and found no medical evidence to support Strauss' complaints of chronic low back pain. Dr. Huynh advised Strauss to avoid repetitive back bends, twisting, turning and lifting and to alternate sitting and standing.

On March 4, 1995, John Everett, M.D. found only carpal tunnel scars on an orthopedic examination. He found no crepitus, no effusions, and no increased warmth over any of Strauss' joints.

On March 20, 1995, Martin Kehrli, M.D. examined Strauss and concluded that Strauss could occasionally lift fifty pounds; could frequently lift twenty-five pounds; could stand/walk and sit for six hours in an eight-hour work day; had unlimited push/pull ability; and had no postural or manipulative limitations. Dr. Kehrli noted a small central lumbar disc herniation and decreased grip strength, despite which Strauss had a normal range of motion in his wrists and fingers.

On March 22, 1995, John W. Thompson, M.D. found probable spondylolisthesis L5–S1 by history and probable degenerative disk disease. Dr. Thompson requested further studies, particularly x-rays of the low back and cervical spine.

On May 3, 1995, Frances Miller, Ph.D., a licensed psychologist, reported that "[t]he MMPI suggests the possibility of hysterical type conversion symptoms due to the high number of somatic concerns." TR 307.

On May 23, 1995, Andrew Frank, M.D. reported that Strauss should avoid painful repetitive bending of his wrists, should

wear wrist springs, and should use an economically-designed work station due to his carpal tunnel syndrome.

A psychodiagnostic evaluation was made on July 20, 1995 by Roderick P. Calkins, Ph.D. He reported that Strauss had no cognitive deficits that would hinder his ability to learn new material or to adapt to new work tasks.

On August 14, 1995, a psychiatric review was conducted. The conclusion was that Strauss had a major depressive disorder, single episode, mild. Strauss was found to be able to follow simple and routine verbal instructions and to concentrate on simple tasks, but that he would not do well in employment requiring contact with the public.

On April 16, 1997, Randall Henery, D.O. diagnosed both of Strauss' wrists as positive for Phalen's and Tinel's syndrome. Strauss was advised to stop smoking.

On June 24, 1997, David A. Thorsett, M.D. performed carpal tunnel surgery on Strauss.

On July 29, 1997, Strauss was admitted to the Salem Hospital for infection in his right hand due to the carpal tunnel surgery. Dr. Thorsett operated on his hand to drain and irrigate the wound. Strauss was discharged on July 31, 1997.

On August 22, 1997, Dr. Thorsett reported that Strauss continued to have swelling and pain, and that Strauss was currently quite limited in his right hand for work of any significant degree, although Dr. Thorsett expected continued improvement.

On October 23, 1997, Strauss appeared to be in good spirits and reported to Dr. Thorsett that he had been hunting. The range of motion in all digits was full, but with reduced grip strength.

On October 30, 1997, Dr. Thorsett reported that Strauss was progressing nicely with aggressive therapy. Dr. Thorsett also reported that "[f]unctionally his hand is much improved with increasing strength on a weekly basis. He is continuing to have subjective paraesthesias in the median nerve distribution which limits him to some degree regarding right handed work." TR 41.

On January 20, 1998, Dr. Thorsett reported that there was no evidence of ongoing infection, although there was evidence of some degree of continued median nerve compromise.

### 3. *Vocational Expert*

The vocational expert found that Strauss could be a wafer mounter, gas and oil servicer, or panel cutter, but that Strauss should have limited public contact and could not return to his previous work. TR 221.

### 4. *The ALJ's Decision*

The ALJ found that Strauss had severe multiple orthopedic complaints, including subjective neck, hip, back and knee pain; headaches; a history of bilateral carpal tunnel syndrome; and mild major depression, single episode. The ALJ also found that Strauss was not disabled and therefore not entitled to social security benefits.

When he evaluated the testimony of Strauss and his mother regarding Strauss' pain and perceived work-related limitations, the ALJ found that neither were credible witnesses. While the ALJ found that Strauss was unable to perform work requiring heavy or very heavy exertion, he found that Strauss could perform full range of medium exertion in lifting objects weighing less than fifty pounds; that he could frequently lift and carry objects weighing twenty-five pounds; that he could sit intermittently and stand/walk for six hours per eight-hour day; and that he had unimpaired use of his arms and hands for fine and gross manipulation. The ALJ found that the mental state of Strauss would, at most, limit him to unskilled work with limited public contact.

The ALJ found that Strauss could not perform his past relevant work, but that

he had the residual functional capacity to perform a wide range of medium exertion work and could still work as a wafer mounter, gas and oil servicer, and panel cutter, all of which exist in significant numbers in the national economy.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner]'s conclusion." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert,* 482 U.S. at 140, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140–41, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.; see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert,* 482 U.S. at 141–42, 107 S.Ct. 2287; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

Rodney Strauss contends that the ALJ erred by rejecting his complaints of pain without stating clear and convincing reasons for doing so, while the Commissioner contends that the ALJ provided an adequate record for his decision to deny the application of Strauss for social security benefits.

Once a claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject subjective complaints based solely on a lack of

corroborative objective medical evidence regarding the alleged severity of the pain or the degree of impairment. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). When concluding that subjective complaints are not credible, the ALJ must make specific findings supporting this conclusion. *Id.* Such findings must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony regarding pain. *Id.* at 345–46. *See also* 20 C.F.R. § 404.1529 (1993). The ALJ must make findings on the record and must support those findings by pointing to substantial evidence in the record. *Id.*

■ It is undisputed that an ALJ is entitled to make a credibility assessment of a claimant's testimony. Nevertheless, once the claimant establishes an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject the claimant's testimony, providing there is no evidence of malingering. *Smolen v. Chater,* 80 F.3d 1273, 1281–82 (9th Cir.1996).

"To determine whether the claimant's testimony regarding the severity of [his] symptoms is credible, the ALJ may consider ... (1) ordinary techniques of credibility evaluation ...; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284. Also the ALJ must consider the factors set forth in SSR 88–13, including the "claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Id.*

■ The medical evidence produced here is that Dr. Hickethier was of the opinion that Strauss could return to work, and Dr. Wilson was of the opinion that there was no medical reason that Strauss could not return to his employment after he had examined Strauss. Dr. Everett noted that there were no marked findings on the orthopedic examination, such as crepitus, effusions, or increased warmth over any of Strauss' joints, except for the carpal tunnel scars. Dr. Huynh examined Strauss and found no objective symptoms of chronic low back pain. The ALJ listed these medical records when he evaluated the credibility of Strauss. Although the recommendation of Dr. Huynh that Strauss should avoid repetitive back bending, twisting, turning and lifting and alternate sitting and standing is odd in light of her findings, the ALJ did not err in failing to address that inconsistency in light of the weight of other medical evidence.

Furthermore, together with the medical records, the ALJ properly considered the daily activities of Strauss, such as running errands with his children and doing some housework, other household chores, and shopping. An ALJ may consider daily activities as a factor in making credibility determinations. *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.1995). The ALJ also stated that "[t]he claimant's very spotty work history and his frequent Workmen's Compensation claims also weighs against his willingness to work or industriousness." TR 82. This court concludes that the ALJ made specific findings, giving clear and convincing reasons for rejecting Strauss' testimony regarding his subjective complaints. The ALJ did not arbitrarily discredit the testimony of Strauss.

Strauss also contends that the ALJ erred by totally disregarding the corroborating testimony of Strauss' mother simply because it conflicted with the medical evidence. The Commissioner contends that the ALJ provided specific and germane reasons for finding that the testimony of this lay witness was not credible.

An ALJ shall consider observations by non-medical sources as to how an impair-

ment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987). "[T]he ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects." *Smolen,* 80 F.3d at 1288. "An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight." *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ considered the lay testimony of the claimant's mother, but concluded that it was not credible because it was in conflict with the medical testimony and evidence. The reasons provided by the ALJ for discrediting this lay testimony were germane reasons.

Finally, Strauss contends that the ALJ erred by finding him capable of performing medium work. The ALJ found that the residual functional capacity of Strauss is medium work. This work category is reduced by restriction to unskilled work with limited public contact, such as wafer mounter, gas and oil servicer, and panel cutter. Although both Strauss and his mother testified as to his physical restrictions, the ALJ determined, and this court does affirm, that based on clear and convincing evidence, this testimony is not credible. Perhaps even more importantly, the medical records support the finding that Strauss is capable of performing medium level work.

## CONCLUSION

Considering the record as a whole, the findings of the Commissioner are supported by substantial evidence, and therefore the court affirms the decision of the Commissioner.