Tomas **DELGADO**, Plaintiff-Appellant,

v.

**Margaret H. HECKLER,*** Secretary of Health and Human Services, Defendant-Appellee.

No. 82–6000.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1983.

Decided Dec. 28, 1983.

* Pursuant to Fed.R.App.P. 43(c)(1), we substitute Margaret H. Heckler, successor to the original appellee Richard S. Schweiker, as the Secretary of Health and Human Services.

Lew Hollman, Pacioma, Cal., for plaintiff-appellant.

Michael R. Power, Asst. Regional Atty., San Francisco, Cal., for defendant-appellee.

Before BROWNING, CHOY and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

The Department of Health and Human Services ("HHS") denied Tomas Delgado's application for Supplemental Security Income ("SSI") on the ground that he did not suffer from a "severe" impairment. Under recently adopted HHS regulations, such a determination automatically results in a denial of disability benefits. Delgado challenges the application of the regulations to the facts of his case. He also challenges the validity of the nonseverity regulation as inconsistent with the Social Security Act under which it was promulgated. We find that the Secretary's finding of nonseverity was not supported by substantial evidence. The district court is reversed.

FACTS

Delgado was born in 1922 and has a fifth grade education. He has done factory work and gardening, but has not worked since the early 1970's. He received SSI benefits based on disability from mid-1975 until mid-1979, when the benefits were terminated pursuant to a finding that he was no longer disabled. Delgado did not appeal that determination. In 1980 he filed a new application for benefits, claiming that his condition had worsened. His primary physical problem is back pain associated with discogenic disease. He also complains of abdominal pain remaining from a pre-1970 history of alcoholic liver disease including cirrhosis, and has had surgery to remove a cataract from one eye.

Delgado had a hearing before an administrative law judge ("ALJ") in June 1980. In addition to Delgado's testimony that he was in constant pain, which was occasionally immobilizing, the ALJ considered reports from several doctors. The record included an electromyogram, showing normal results, which tested for possible nerve damage from discogenic disease, and was conducted in September 1979. There is no indication in the record that the test was repeated in 1980 when Delgado began complaining of a worsening of his condition. An ophthalmologist's report showed 20/25 vision in Delgado's left eye, and 20/400 in the right. Cataract surgery was scheduled and normal vision predicted upon completion. That surgery took place shortly before the hearing, and there is no indication that it was not successful.

The ALJ referred Delgado to Dr. Fell, an orthopedic surgeon, who examined him on July 10, 1980 and diagnosed nodular fascitis of the lumbosacral spine and mild chondrolomacia of the knees. Fell noted normal range of motion and sensation except for limitation of straight-leg raising. X-rays showed some spurring, but no major spinal problems. Dr. Fell concluded that occasional squatting, bending or crawling would cause no difficulty, although repeated or sustained activities of that nature for more than four hours should be avoided. He later added that Delgado could alternately sit, stand or walk for an eight-hour day, although with some back pain. Episodes of back and knee pain could be expected due to Delgado's condition, but the condition was susceptible to improvement with medication and exercise. He believed Delgado could lift twenty-five pounds without difficulty, and greater weight on an infrequent basis.

Based on the foregoing, the ALJ concluded that Delgado's condition was not severe,

i.e., did not "significantly limit [his] physical or mental capacity to perform basic work-related functions." *See* 20 C.F.R. § 416.-921. The Appeals Council accepted the ALJ's decision, and Delgado then moved to reopen the case, submitting two new documents. One was a note dated May 26, 1981 from his internist, Dr. Mueller, stating that Delgado was suffering the effects of cirrhosis of the liver and disabling abdominal pain. The other was a letter dated March 12, 1981 from Dr. Fell, who had previously examined Delgado on behalf of HHS, but who later saw him as a private patient. This letter stated that, although Dr. Fell had originally thought Delgado capable of "four hours" aggregate sitting or standing per day if he did neither activity for more than one hour at a time, he now found that the back condition had worsened. Dr. Fell noted increased pain and limitations on mobility and stated that the injections and physical therapy he had prescribed had proved unsuccessful. He also noted that Delgado's stomach problems had worsened, that Delgado had seen his internist, and that he possibly had cholecystitis and pancreatitis.

The Appeals Council found the additional evidence "either consistent with evidence previously made part of the record and/or containing opinions not supported by clinical or medical evidence" and declined to vacate the prior decision. The ALJ's decision thus became the final decision of the Secretary, which Delgado then brought to the district court. His petition was reviewed by a magistrate, whose recommendation in favor of HHS was adopted by the district court judge. Delgado's action was dismissed on the merits, and he appeals.[1]

## STANDARD OF REVIEW

The Secretary's determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g), and the Secretary applied the proper legal stan-

dards. *Hall v. Sec'y of HEW,* 602 F.2d 1372, 1375 (9th Cir.1979). The decision will be set aside, however, if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence. *Benitez v. Califano,* 573 F.2d 653, 655 (9th Cir.1978).

## DISCUSSION

The Social Security Act was amended in 1967 to require that any determination of a claimant's disability reflect not only his medical condition, but also those vocational factors that reflect his potential for employment. *Santise v. Schweiker,* 676 F.2d 925, 926 (3d Cir.1982). The amended Act provides, in relevant part:

> An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

42 U.S.C. § 1382c(a)(3)(A).

> For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity *that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,* regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence

---

1. In 1982, the Secretary alleges, Delgado filed a new application for benefits and, based on the fact that his age now placed him in the category of claimants "closely approaching retirement age," he was granted disability benefits.

Assuming that this is the case, Delgado's petition is not moot; rather his claim is limited to the period during which he was denied benefits. *Heckler v. Campbell,* —— U.S. ——, —— n. 7, 103 S.Ct. 1952, 1955 n. 7, 76 L.Ed.2d 66 (1983).

(with respect to any individual), "work which exists in the national economy" means. work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

Pursuant to statutory authorization, 42 U.S.C. § 405(a), HHS promulgated regulations to be used to determine whether a claimant suffers an impairment severe enough to warrant a finding of disability. Delgado contends that under these regulations the Secretary wrongly denied him benefits on the ground that his impairment was not severe. A nonsevere impairment under the regulations is described as follows:

(a) *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitude necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921.

Delgado argues that these regulations allow the Secretary to deny disability benefits solely on a finding that the impairment is not severe medically, even though the claimant may not be able to return to his previous employment or to perform any other existing employment. In addition, he points out that the challenged regulation fails to include a consideration of the "age, education, and work experience" of the claimant, as required by the Social Security Act, 42 U.S.C. § 1382c(a)(3)(B), and indeed expressly excludes a consideration of those factors. 20 C.F.R. § 416.420(c). Finally,. Delgado contends that the Secretary's finding of nonseverity is not supported by substantial evidence. Before assessing the validity of the nonseverity regulations, we first examine whether they were correctly applied in Delgado's case.

Delgado is correct that the Secretary erred by finding that his impairment was "not severe." In making the original finding, the ALJ relied on the relative lack of objective medical evidence of spinal abnormality or damage, Dr. Fell's assessment of minimal severity, and the ALJ's own observations of Delgado's appearance and behavior at the hearing. The ALJ specifically noted that Dr. Fell "estimated that claimant could occasionally lift from 26 to 50 pounds and could sit, stand or walk for 8 hours during an entire 8 hour work day." This conclusion is questionable in light of Dr. Fell's narrative report of August 1, 1980 that "prolonged sitting or standing greater than one hour in one spot would cause some back pain." Nevertheless, a later form report submitted by Dr. Fell on November 5, 1980 did indicate that Delgado could alternately sit, stand or walk for an entire eight-hour day, and lends support to the ALJ's original opinion.

In making the final decision, however, the Appeals Council also had before it the letter from Dr. Fell dated March 12, 1981 in which he cleared up some ambiguities and changed his prognosis. He stated that medical and physical therapy had proven unsuccessful, and that Delgado could not sit, stand or walk for even half of a normal working day. The Council concluded that this additional information did not warrant a change in the decision. Here the Council erred.

Contrary to the Appeals Council conclusion, Dr. Fell's revised evaluation was neither consistent with the earlier evidence relied on by the ALJ nor unsupported by clinical or medical evidence. It conflicted with the earlier evidence of nonseverity by

clearly limiting to half a working day the aggregate number of hours Delgado could stand or sit. In accordance with 20 C.F.R. § 416.921, Dr. Fell's assessment of Delgado's impairment showed that it significantly limited Delgado's physical abilities to do basic work activities. A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy. Dr. Fell's assessment, based on treatment of the claimant, cannot be dismissed without clear and convincing reasons for doing so. *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981).

The Secretary argues that even if Delgado has a severe impairment, he is not entitled to SSI benefits because he in fact can work. In summary, the Secretary asks this court to: (1) assume that Delgado's residual functional capacity is normal except for an inability to lift over 50 pounds; (2) assume further that Delgado's previous work as a gardener required only "medium" exertion and that his previous work as a "de-burrer" was sedentary or light work; (3) and conclude that he could return to either or both jobs and is not disabled. Certainly we have occasionally *wished* that we could routinely make assumptions concerning a case before us; however, we must reject the temptation. The record contains no findings on Delgado's residual functional capacity, no findings on the nature of his previous gardening work, and no findings as to the type of work performed by a de-burrer. Indeed, the decisions of the ALJ, the Appeals Council, the magistrate, and the district court were based on the preliminary finding of nonseverity, and thus these questions of actual disability were not reached. It is not our function to make these findings here.

CONCLUSION

The decision to deny Delgado disability benefits because his impairment was not "severe" is not supported by substantial evidence. We therefore do not reach Delgado's very troublesome contention that 20 C.F.R. § 416.921 of the regulations, expressly excluding consideration of age, work experience and education, is facially inconsistent with the Social Security Act, 42 U.S.C. § 1382c. This case is REVERSED AND REMANDED to the agency for further proceedings not inconsistent with this opinion.