21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gevork GAMBARIAN, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-55594.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided March 31, 1994.
 
 Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN, District Judge.*
 MEMORANDUM**
 The claimant, Gevork Gambarian, appealed to the district court the decision of the Secretary of Health and Human Services[1] denying his application for Social Security disability benefits. The district court granted summary judgment for the Secretary, affirming the administrative decision. Because it is clear that Gambarian is eligible for benefits, we reverse the district court and remand the case to the Secretary, directing that benefits be awarded.
 FACTS AND PROCEEDINGS BELOW
 Gevork Gambarian was born in 1940 and completed ten years of schooling in Russia. While serving in the Soviet Army in 1959, he was shot in the buttock and groin and subsequently required fifteen surgical procedures. Between 1961 and 1978, he was physically unable to work more than six hours a day and more than half of the days, measuring small metal elevator parts. He was admitted to the United States in 1980.
 Mr. Gambarian filed an application for SSI benefits in October, 1988, alleging disability due to nervousness and a war injury. After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge (ALJ). At the hearing, which was held in March, 1990, Gambarian testified with the help of an interpreter. He stated that he must sit with his weight on his right buttock and his left leg extended in front because of sharp needle-like pains in his back, left knee, and left hip. After thirty minutes of such sitting, his right side becomes numb. He can stand comfortably for about five minutes and can walk only 150 to 200 meters before his left leg swells. Gambarian is unable to bend over, but he believes that he could occasionally lift an object of up to ten pounds. He stated that he experiences constant needling pain in his back and left side and persistent headaches for which he takes Tylenol. The pain intensifies at night and is strong enough to awaken him two nights out of seven. Gambarian testified that the pain interferes with his ability to concentrate, read, remember, and socialize with others. Except for some cooking and washing dishes, he spends much of the day lying down. His children do all of the cleaning. Gambarian also stated that he experiences fear at night because he relives being shot.
 In addition to Gambarian's testimony, the ALJ considered five medical reports; two evaluated the claimant's physical condition, three assessed his mental status. Dr. Lavi, an orthopedist, examined Gambarian's residual gunshot wound. X-rays revealed "marked deformity" and "multiple changes" involving the lower back. Dr. Schatz, an internist, after finding some mild orthopedic limitations and pain, stated that Gambarian's walking, lifting and sitting were limited: Gambarian "should be able to stand twenty to thirty minutes at a time and walk a short distance," could "perform light lifting occasionally," and probably could "sit one-half to three-quarter hour at a time." Dr. Yetenekian, a psychologist, concluded that Gambarian could be considered "temporarily disabled" because of mood disorder, agitated depression, and borderline intellectual functioning. Dr. Tashjian's psychiatric evaluation, performed nearly two years later, noted post-traumatic stress disorder and major depression with melancholic features. He suggested that Gambarian's condition "warrants intensive psychiatric treatment." Finally, Dr. Isidro, a psychiatrist, noted mood disorder and a "restricted" affect. He concluded, however, that Gambarian's limitations were "mild with regards to his ability to make occupational, personal or social adjustments."
 The ALJ found that Gambarian had not engaged in substantial gainful activity since October 14, 1980. From the medical evidence, the ALJ concluded that Gambarian suffers from residual gunshot wound, mild lumbar pain, and an affective disorder. The ALJ found, however, that Gambarian does not have an impairment or combination of impairments that would automatically qualify him for benefits. The ALJ considered Gambarian's allegations of disabling pain to be not credible, but she admitted that Gambarian's physical capabilities would permit him only to perform light work but not to engage in heavy lifting or prolonged standing. Based on the testimony of a vocational expert, the ALJ also found that Gambarian's past relevant work was similar to that of a quality control inspector and that his impairments do not prevent him from performing this type of work. Therefore, the ALJ concluded that Gambarian was not entitled to benefits.
 The ALJ's decision became the final decision of the Secretary when the Appeals Council declined to review it. Gambarian appealed the denial of benefits to the district court, which granted summary judgment for the Secretary. Gambarian appeals to this court pursuant to 28 U.S.C. Sec. 1291 and 42 U.S.C. Sec. 405(g). He claims that the ALJ improperly rejected the opinions of the doctors, who reported that Gambarian is disabled because of both physical and mental conditions. He also contends that the ALJ discredited his evidence of disabling pain without providing legitimate reasons. Finally, he argues that the ALJ incorrectly found that the vocational expert's testimony indicated that Gambarian is capable of doing his past relevant work. We find all of these claims persuasive.
 STANDARD OF REVIEW
 This Court reviews de novo the district court's grant of summary judgment for the Secretary. The ALJ's determination that Gambarian was not disabled is reviewed to determine whether it was supported by substantial evidence and whether it was based on the proper legal standard. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). As a reviewing court, we must review the record as a whole and consider adverse as well as supporting evidence. We may not affirm "simply by isolating a specific quantum of supporting evidence." DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir.1991) (citations omitted).
 ANALYSIS
 In order to qualify for Social Security disability benefits, a claimant must establish that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. Sec. 423(d)(1)(A). The impairment must result from abnormalities that are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. Sec. 423(d)(3).
 I. The Medical Evidence
 Gambarian contends that his medical records directly contradict the ALJ's conclusion that his impairment is not significant enough to prevent him from engaging in substantial gainful activity. We agree. Dr. Lavi's report documents "marked deformity" and "multiple changes" in Gambarian's lower back. Dr. Schatz's report opines that Gambarian "should be able to stand twenty to thirty minutes at a time and walk a short distance, ... perform light lifting occasionally, ... [and] probably sit one-half to three-quarter hour at a time," and adds that "[i]n view of the chronicity of his back pain and presentation, I doubt significant improvement." Given these strong indications of Gambarian's serious physical disability, the ALJ was obliged to "explain why [s]he has rejected uncontroverted medical evidence." Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511 (9th Cir.1987). The ALJ failed, however, to offer any explanation for her decision to ignore this evidence. Such failure was clearly prejudicial, especially given this Court's prior recognition that any person "who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy." Delgado v. Heckler, 722 F.2d 570, 574 (9th Cir.1983).
 The ALJ committed similar error with regard to the medical reports on Gambarian's mental condition. While there was some conflict about the severity of Gambarian's emotional problems among the three psychologists who examined him, each of the reports noted Gambarian's continuing reaction to his traumatic gunshot wound and found some form of depression, either "major," "agitated" or "restricted affect." In addition, each of the reports listed Gambarian's prognosis as "guarded." Because the diagnoses of the three doctors were separated by more than twelve months, claimant demonstrated the longitudinal history of mental impairment required under 42 U.S.C. Sec. 423(d)(1)(A). Thus, the ALJ erred in finding, without explanation, that "[t]he medical records fail to document any significant emotional or mental impairment ..." While they differed about the severity of the emotional problem, the medical reports were uncontroverted about the fact of its existence.
 II. Credibility Findings
 The ALJ's finding that Gambarian could perform his past relevant work was based, in part, upon her determination that his testimony was not credible. We agree with Gambarian that the ALJ's negative credibility finding was improper. Although it is within an ALJ's power to make findings concerning a claimant's credibility and to weigh conflicting evidence, an ALJ cannot seek to justify negative credibility findings by "ignoring competent evidence in the record that suggests an opposite result." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) (citations omitted). Our review of the full record suggests that the ALJ in this case did just that.
 The ALJ's negative credibility finding was based on several facts adduced in Gambarian's testimony that the ALJ felt were inconsistent with disability. First, the ALJ found that Gambarian was capable of performing light work because he had testified that he looked for light work when he arrived in the United States. But the fact that Gambarian looked for light work when he arrived in this country does not mean that he would have been capable of performing that work, either at that time or subsequently. In fact, Gambarian testified several times that his condition had worsened over the ten years between the year of his immigration and the year of the hearing. Thus, this evidence is of minimal worth at most.
 The ALJ also stated, without explanation, that Gambarian's inability to speak English, rather than his physical disability, explained why he was unable to find light work immediately after he immigrated to the U.S. Admittedly, Gambarian's lack of fluency likely hurt his prospects for employment. This does not, however, in any way affect the fact that there were additional and serious barriers to Gambarian's ability to work created by his disability.
 The ALJ also doubted Gambarian's disability because he was able, she believed, to perform all of the household chores and care for his three "young" children. There was no evidence to support the ALJ's doubts in this regard. In fact, Gambarian testified that his children were seventeen, fifteen, and fourteen at the time of the hearing. Moreover, while Gambarian testified that he did some cooking and washing dishes, the children did all of the cleaning and helped with the grocery shopping.
 In addition, the ALJ noted some alterations in Gambarian's responses to questions on absenteeism at his previous job in the Soviet Union and his ability to perform a regular work week in the United States.[2] The ALJ attributed the differences in testimony to the prompting of Gambarian's attorney and chose to disregard all "prompted" testimony. A review of the record, however, reveals that Gambarian's attorney reiterated questions to which his client had not been responsive because of language or translation difficulties, and that the conclusion of "prompting" is wholly without support.
 The ALJ also did not believe Gambarian's testimony of a disabling "nervous condition." The ALJ cited the fact that Gambarian's "activities of daily living have been quite extensive" and that he socializes. This is directly contradicted by virtually all of the testimony on Gambarian's activities, which indicated that Gambarian spends most of each day lying down--he rarely socializes. Moreover, the undisputed testimony was that such usual diversions as television or listening to music cause Gambarian's chronic headaches to worsen. The ALJ noted that Gambarian had not sought ongoing psychiatric treatment and, therefore, must not have felt that he needed such help. Claimant's counsel, however, explained his client's failure to seek treatment because of a lack of both income and medical insurance. Here too, the ALJ's conclusion finds no factual support whatsoever and is instead based on her total disregard of the uncontested facts.
 The ALJ also said that "the claimant's allegations of pain have been evaluated and found not to be credible to the extent to which he testified." But again, the ALJ impermissibly chose to ignore contrary facts in the record. Gambarian had clearly established a medical impairment reasonably likely to be the cause of his pain. Accordingly, the ALJ was bound to consider "all of the available evidence" because "pain is subjective and not susceptible to measurement by reliable techniques." See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991). The ALJ may not discredit Gambarian's testimony of pain and deny disability benefits "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell, 947 F.2d at 346, 347. In order to properly discount a claim of excess pain, "an ALJ must make specific findings justifying that decision." Magallanes, 881 F.2d at 755.
 In her opinion, the ALJ noted that Gambarian sat throughout the hearing in no apparent discomfort. As we have pointed out before, "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible." Gallant, 753 F.2d at 1455 (citations omitted). Moreover, although the record reveals that the hearing lasted less than 55 minutes, the claimant testified that he had to sit with his weight mostly on his right side and with his left leg extended out in front and that his right hip and buttock were "starting to be numb." Thus, contrary to the ALJ's perceptions, the relevant facts regarding the claimant's participation in the hearing support rather than undermine his claim.
 The ALJ also mentioned the fact that Gambarian "takes nothing more than Tylenol for pain." In response, Gambarian noted the undesirable side effects caused by taking strong prescription medications for a permanent condition. Gambarian also pointed out the substantial cost of prescription medication for chronic pain, that he had long been unemployed, and that he did not have health insurance. The ALJ could not rely on Gambarian's failure to take pain medication as a basis for her negative credibility finding because it was undisputed that Gambarian had good reasons for not taking such medication. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.1989).
 In sum, the ALJ's negative credibility finding was improper because it was based on a selective and erroneous reading of Gambarian's testimony: There was no proper basis in the record for such a finding.
 III. The Vocational Expert
 Finally, Gambarian argues that the hypothetical propounded to the vocational expert did not accurately specify all his disabilities. Hypothetical questions posed to vocational experts "must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988) (emphasis in original).
 The ALJ asked the vocational expert two hypotheticals. The first hypothetical proposed the following limitations on Gambarian's working ability: forty-nine years old, non-English speaking, tenth grade education, limited to light work only, required to sit a majority of the time while changing position by shifting side to side, required to stand and walk to relieve numbness or pain. Based on this hypothetical, the vocational expert stated that Gambarian could perform his past relevant work. In the second hypothetical, the ALJ added the element of concentration reduced by 25 to 35 percent because of pain. To this hypothetical, the vocational expert testified that the claimant would not be able to perform his past relevant work.
 Because the ALJ determined that Gambarian's testimony of pain and inability to concentrate was not credible, she decided to rely on the first hypothetical and found him able to perform his past relevant work. That determination was improper. As explained above, the ALJ improperly discredited Gambarian's testimony of pain, depression and inability to concentrate. These elements should have been part of the vocational expert's evaluation of Gambarian's ability to work. Because they were not included, the assumptions in the hypothetical were not supported by the record, and "the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant, 753 F.2d at 1456. The second hypothetical was the proper one, and under the conditions posited in that hypothetical the vocational expert stated that Gambarian was not able to perform his past relevant work.
 Because we find substantial evidence in the record as a whole that Gambarian was disabled within the meaning of the Act, and because we find no substantial evidence for the ALJ's erroneous findings, we need not remand the case to the ALJ for further proceedings. Gambarian is clearly not capable of performing his past relevant work--his condition has worsened to the point where he can no longer sit long enough to do work similar to the job measuring elevator parts he held in Russia. As for residual capacity to perform other jobs, we note again that Gambarian cannot sit, stand or walk for over one hour without disabling pain. A person with this degree of disability "does not have the capacity to do most jobs available in the national economy." Delgado, 722 F.2d at 574. Here, Gambarian's considerable mobility problems, coupled with his affect disorder and his persistent headaches (which render him unable to concentrate and force him to spend most of the day lying down), make it clear that he has no capacity to do any job reasonably available in the national economy. See Sprauge v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987); Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir.1984). There is no contrary evidence anywhere in the record. We therefore reverse the district court's grant of summary judgment and remand the case with instructions to the Secretary to award disability benefits.
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Donna Shalala has been substituted for her predecessor in office, Louis W. Sullivan, pursuant to Federal Rule of Appellate Procedure 43(c)(1)
 
 
 [2]
 During oral argument, appellee's counsel emphasized that earlier Gambarian had submitted a form that reflected inconsistent information about his prior employment experience in Russia. It should be noted that the ALJ's decision never mentioned these inconsistencies as a reason for her negative credibility finding. Perhaps the ALJ realized, as do we, that the form filled out by an English-speaking interviewer on behalf of the non-English-speaking appellant does not support her credibility determination