**Bret E. BAILEY, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

No. CV–09–199–JPH.

United States District Court, E.D. Washington.

June 30, 2010.

Maureen J. Rosette, Dana Madsen Law Office, Spokane, WA, for Plaintiff.

Terrye Erin Shea, Social Security Administration, Seattle, WA, Frank A. Wilson, U.S. Attorney's Office, Spokane, WA, for Defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g)

JAMES P. HUTTON, United States Magistrate Judge.

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Terrye Erin Shea represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** defendant's Motion for Summary Judgment and **GRANTS** plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Bret E. Bailey (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on November 7, 2006. (Tr. 127–33.) Plaintiff alleged an onset date of February 2, 1995. (Tr. 127, 130.) Benefits were denied initially and on reconsideration. (Tr. 99, 104.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R.J. Chestnut on September 11, 2008. (Tr. 46–94.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 50–83.) Vocational expert Tom Moreland also testified. (Tr. 83–94.) On October 29, 2008, the ALJ issued a written decision denying benefits. (Tr. 29–43.) The Appeals Council denied review (Tr. 1) and the matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 48 years old at the time of the hearing. (Tr. 50.) He attended school for 16 years but is one five-credit class short of a bachelor's degree. (Tr. 55.) He was working toward a double major in finance and economics. (Tr. 55.) Plaintiff has work experience as a mortgage broker, a lab technician at a hospital, a self-employed realtor, and a loan processor. Plaintiff has also worked in a printing department on printing machines, in customer service at a bank call center, and for the Social Security Administration as a claims representative. (Tr. 58–66.) Plaintiff testified he stopped working due to a to a combination of factors resulting from a November 2006 heart attack, including pain, difficulty concentrating, preoccupation with his health, inability to manage the stress, and slower pace. (Tr. 57.) The problems that keep him from working are pain and fatigue. (Tr. 67.) Plaintiff's pain is primarily back pain radiating into his hips and thighs. (Tr. 68.) He testified his medication makes him unreliable, affects his short term memory and leaves him in a haze. (Tr. 68, 70.) He has problems with coordination and mental confusion, anxiety and depression. (Tr. 70–71.) He prefers to avoid people, is uncomfortable in social settings, and has trouble making eye contact. (Tr. 73.)

## STANDARD OF REVIEW

 Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error

and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601–602 (9th Cir.1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.1980)).

■ It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400, 91 S.Ct. 1420. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.1987).

## SEQUENTIAL PROCESS

■ The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impair-

ments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has engaged in substantial gainful activity since February 2, 1995, the application date. (Tr. 31.) The ALJ found plaintiff had substantial gainful activity for most if not all of the period before June 27, 2006. (Tr. 32.) Work from June 27 to November 2006 was characterized as an unsuccessful work attempt. (Tr. 32.) At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease/arthritis, cardiac impairment, asthma, pain disorder, anxiety and depression. (Tr. 38.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.) The ALJ then determined:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can stand and/or walk 6 hours in an 8–hour day. He can sit 6 hours in an 8–hour day. He requires a sit/stand option to change position every hour. He can occasionally engage in stooping and crouching. He should avoid climbing ropes, ladders or scaffolds. He should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, etc, and hazards such as dangerous machinery and heights. He is cognitively intact and capable of simple and well-learned

tasks. His attention, concentration, persistence and pace would be slowed episodically by his psychological symptoms. He would do best away from the demands of the general public. He may need additional time to adjust to work setting changes. (Tr. 39.) At step four, the ALJ found plaintiff is capable of performing past relevant work as a collator, data entry clerk, deliverer, and printer machine operator. (Tr. 42.) Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from February 2, 1995 through the date of the decision.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred in considering the medical and psychological opinion evidence. (Ct. Rec. 14 at 13–20.) Defendant argues the ALJ properly assessed the medical source evidence. (Ct. Rec. 17 at 5–31.)

## DISCUSSION

### 1. Dr. Dalley

Plaintiff argues the ALJ improperly rejected the opinions of Dr. Dalley, an examining psychologist, in favor of the opinion of Dr. Gentile, a consulting psychologist. (Ct. Rec. 14 at 17–18.) Dr. Dalley and his colleagues examined plaintiff three times from November 2006 to March 2008. (Tr. 301–09, 423–31, 477–91.) After the first examination on November 14, 2006, Dr. Dalley diagnosed pain disorder associated with both psychological factors and a general medical condition and opioid dependence. (Tr. 304.) Dr. Dalley completed a DSHS psychological/psychiatric evaluation form and assessed no limitations based on cognitive factors, but identified moderate or marked limitations for all social factors.

(Tr. 308.) In particular, Dr. Dalley assessed marked limitations in plaintiff's ability to interact appropriately with public contacts and in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 308.)

In a second report dated April 27, 2007, Dr. Dalley diagnosed pain disorder associated with both psychological factors and a general medical condition, panic disorder without agoraphobia, and opioid dependence. (Tr. 423–27.) He again assessed no cognitive limitations and five moderate or marked social limitations. (Tr. 430.) Dr. Dalley assessed marked limitations in the ability to interact appropriately in public contacts, the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and the ability to control physical or motor movements and maintain appropriate behavior. (Tr. 430.) Dr. Dalley noted that plaintiff's anxiety and panic attacks appeared to have increased significantly since the last evaluation. (Tr. 426.)

A third report from Dr. Dalley dated March 17, 2008 includes diagnoses of pain disorder associated with both psychological factors and a general medical condition; major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and opioid dependence. (Tr. 481–87.) Assessed limitations include a severe limitation on the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, marked limitations on the ability to interact appropriately in public contacts and ability to control physical or motor movements and maintain appropriate behavior, and three additional moderate limitations.

Plaintiff argues the ALJ improperly relied on the opinion of Dr. Gentile, a consulting psychologist who did not treat or examine plaintiff. (Ct. Rec. 14 at 17.) Dr. Gentile completed Psychiatric Review

Technique and Mental Residual Functional Capacity forms dated July 12, 2007. She acknowledged diagnoses of panic disorder without agoraphobia, pain disorder associated with both psychological and general medical condition, and opioid dependence. (Tr. 447–56.) Dr. Gentile assessed no marked limitations and four moderate limitations affecting: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting. (Tr. 461–62.)

 In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir.2004); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a

treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.,* 44 F.3d 1453, 1463–64 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir.1989).

 The ALJ discussed Dr. Dalley's opinions, but did not specifically accept or reject them. (Tr. 34–38, 42.) The ALJ indicated he took into account several observations about Dr. Dalley's report in formulating the residual functional capacity finding. (Tr. 42.) While the ALJ did not specifically reject Dr. Dalley's opinion, he effectively did so by adopting the less restrictive limitations assessed by Dr. Gentile in formulating plaintiff's RFC. As an examining physician, Dr. Dalley's opinions were entitled to greater weight than Dr. Gentile's opinion. Thus, the ALJ was required to provide specific, legitimate reasons for rejecting Dr. Dalley's opinions.

The first reason given by the ALJ in rejecting Dr. Dalley's opinions is that Dr. Dalley's second evaluation indicates plaintiff reported severe panic attacks and hallucinations, but other records do not include the same report. (Tr. 42.) However, each of Dr. Dalley's reports mentions panic attacks. The first report indicates that plaintiff had panic attacks so severe he was unable to control his symptoms and ended up at the hospital. (Tr. 302.) The second report mentions severe panic attacks that keep plaintiff from driving, and notes that plaintiff panics whenever he reads or sees something that reminds him of his heart attack. (Tr. 423.) The third report notes plaintiff reported a number of symptoms of panic which occur both situationally and out of the blue at least once per month. (Tr. 481.)[1] (Tr. 21.) Dr. Gentile ac-

1. The Appeals Council added to the record a DSHS psychological/psychiatric evaluation form completed by Dr. Debra Brown on April 3, 2009. (Tr. 4, 586–89.) The form references an accompanying narrative report, but

the narrative is not part of the record. Dr. Brown's April 3, 2009 report is properly considered by this court because the Appeals Council considered it in denying Plaintiff's request for review. *See Harman v. Apfel,* 211

knowledged panic disorder as a diagnosis. (Tr. 452, 459.) While the ALJ is correct that Dr. Dalley indicated plaintiff reported hallucinations in April 2007 and there may be no other reference to hallucinations in the record, it does not appear that Dr. Dalley based any of his findings, diagnoses, or assessed limitations on a single mention of auditory hallucinations. (Tr. 423.) The lone reference to hallucinations may reflect somewhat on plaintiff's credibility, but it does not justify rejection of Dr. Dalley's opinion. Thus, substantial evidence does not support the ALJ's first reason for rejecting Dr. Dalley's April 2007 opinion.

Second, the ALJ noted that plaintiff was in the middle of narcotic tapering at the time the second evaluation. (Tr. 42.) However, Dr. Dalley specifically noted, "Current anxiety symptoms are not believed to be directly related to the effects of his narcotic pain medications." (Tr. 426.) Dr. Dalley was aware that plaintiff had decreased the amount of narcotics he had been taking at the time of the report. (Tr. 424.) The ALJ seems to suggest, without citing any evidence in the record, that plaintiff's symptoms were exaggerated or less reliable because of the narcotics taper, and that therefore Dr. Dalley's assessment is not reliable. This is conclusion beyond the scope of the ALJ's expertise. See *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir.1998) (ALJ is free to choose between properly submitted medical opinions but is not free to set his own expertise against that of a physician); *Rohan v.*

*Chater*, 98 F.3d 966, 970 (7th Cir.1996) (ALJ must not succumb to the temptation to play doctor and make independent medical findings). Substantial evidence does not support the ALJ's reasoning, and the ALJ erred in rejecting Dr. Dalley's second report.

■ With respect to Dr. Dalley's third report dated March 17 2008, the ALJ suggests an inconsistency in Dr. Dalley's findings and conclusions. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ pointed out that Dr. Dalley's third assessment included moderate limitations in cognitive factors, "yet the ALJ notes that the claimant's overall cognitive functioning had not declined, as was reported in [Dr. Dalley's] own narrative notes …" (Tr. 42.) Dr. Dalley's March 2008 assessment included one moderate limitation on the ability to exercise judgment and make decisions, which is listed as a cognitive factor on the DSHS evaluation form. (Tr. 479.) However, Dr. Dalley also commented directly beneath the limitation, "Features of the client's mood and anxiety disorders may affect some cognitive factors." (Tr. 479.) Furthermore, Dr. Dalley's conclusion that plaintiff's ability to exercise judgment and make decisions is impaired is supported by the results of the MMPI–II which indicate plaintiff has the personality profile of someone who is "frequently tense, anxious, depressed and indecisive." (Tr. 483.)

As the ALJ also noted, Dr. Dalley's third assessment indicated it was unlikely

F.3d 1172, 1180 (9th Cir.2000); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.1993). The record is unclear as to the Appeals Council's consideration of a narrative report and DSHS evaluation form completed on August

25, 2008 submitted to the Appeals Council by plaintiff's counsel after the ALJ's decision. (Tr. 9, 11–24.) The August 25, 2008 report indicates plaintiff reported panic attacks three to four times per month.

that plaintiff's intellectual ability negatively affected his ability to seek and maintain employment; rather, the features of plaintiff's pain and anxiety disorder would affect plaintiff's ability to tolerate the task demands, social expectations, and social pressures of a normal work environment. (Tr. 42, 486.) This is not inconsistent with the moderate cognitive limitation assessed by Dr. Dalley regarding the ability to exercise judgment and make decisions because the ability to make decisions is a characteristic distinct from intellectual ability. Indeed, Dr. Dalley specifically noted that plaintiff's anxiety and mood disorders cause the assessed cognitive limitation, not a decline in plaintiff's intellectual functioning. (Tr. 479.) Thus, this reasoning is not supported by substantial evidence and does not support the rejection of Dr. Dalley's opinion

Lastly, the ALJ noted that plaintiff was still undergoing narcotic tapering at the time of the March 2008 evaluation. (Tr. 42.) As discussed above, Dr. Dalley was aware of plaintiff's narcotics regimen and presumably took the effects of plaintiff's narcotics prescriptions into account in making his assessment. (Tr. 481–82.) Dr. Dalley advised continued monitoring of plaintiff's condition and medications. (Tr. 486.) Thus, Dr. Dalley's opinion appears to take into account the effects of plaintiff's treatment with narcotic pain medication.

■■■■ The ALJ cites an note from plaintiff's treating physician, Dr. Bingham, in support of the conclusion that plaintiff's narcotics use affected Dr. Dalley's opinion. The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.2004). In a note dated April 22, 2008, Dr. Bingham indicated plaintiff reported "recent acute back injury and some confusion regarding his OxyContin taper." (Tr.

493.) Dr. Bingham's note was written more than a month after Dr. Dalley examined plaintiff. There is no evidence indicating when the back injury occurred, how long plaintiff had been confused about the OxyContin taper or, most importantly, how it had affected him. In this case, the ALJ's inference that plaintiff's confusion about the OxyContin taper makes Dr. Dalley's report unreliable is not reasonably supported by the limited evidence available. The ALJ's conclusion that plaintiff's attempts to reduce narcotics use somehow exaggerated or made Dr. Dalley's report inaccurate or of less weight is not a specific, legitimate reason supported by substantial evidence.

■■■■ The ALJ failed to properly reject Dr. Dalley's opinions, instead relying on the opinion of a non-treating, non-examining advisor. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995); *Lester*, 81 F.3d at 830–31. Case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039. In this case, the ALJ did not discuss Dr. Gentile's report with any specificity or cite any other psychological evidence or reasoning justifying adoption of the consulting psychologist's opinion over the opinion of an examining psychologist. Thus, the ALJ did not adequately justify rejection of Dr. Dalley's opinion and the ALJ therefore erred.

### 2. Ms. DesChane

■■■■ Plaintiff argues the ALJ did not provide adequate reasons for rejecting the

opinion of treating therapist Monique Des-Chane, MS, CRC. (Ct. Rec. 14 at 18.) Ms. DesChane prepared a report dated September 8, 2008 indicating she had seen plaintiff for 34 weekly individual therapy sessions from June 2007 to September 2008. (Tr. 584.) She diagnosed major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and posttraumatic stress disorder (PTSD). (Tr. 584.) Ms. DesChane opined that plaintiff is significantly impaired and unable to manage his mental health issues outside a therapeutic setting. (Tr. 584.) The ALJ rejected Ms. DesChane's opinion.

In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96–2p; S.S.R. 96–6p. Acceptable medical sources include licensed physicians and psychologists.[2] 20 C.F.R. §§ 404.1513(a), 416.913(a). In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Social Security Ruling 06–3p summarizes regulations providing that only an acceptable medical source can: (1) establish the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source. Evidence from other sources can be used to determine the severity of an impairment and how it affects the ability to work. S.S.R. 06–3p; 20 C.F.R. §§ 404.1513(d), 416.913(d). "Information from other sources cannot establish the existence of a medically determinable impairment. . . . However, information from 'other sources' may be based on special

knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." S.S.R. 06–3p.

■ In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable medical source than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir.1996). An ALJ must give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

In this case, Ms. DesChane specifically opined as to how plaintiff's mental impairment affects his ability to work. (Tr. 584.) Ms. DesChane said, "Mr. Bailey's mental health issues impair his ability to function in a productive way and at times affect his ability to complete even activities of daily living, and certainly affect his ability to sustain employment on a continuous basis." (Tr. 584.) Ms. DesChane is an "other source," so the ALJ was required to provide germane reasons for rejecting her opinion.

■ The ALJ cited two reasons for rejecting Ms. DesChane's opinion. First, the ALJ gave no weight to Ms. DesChane "in light of the fact that she is not a psychologist." (Tr. 42.) This is not an acceptable or germane reason for rejecting Ms. DesChane's opinion. The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). By definition, an "other source" is not a psychologist. Although an "other source" opinion may be entitled to less weight, that does not mean it is enti-

**2.** Other acceptable medical sources are licensed podiatrists and optometrists and qualified speech-language pathologists, in their respective areas of specialty only. 20 C.F.R. §§ 404.1513(a), 416.913.(a).

tled to no weight. As a result, the ALJ's first reason for rejecting Ms. DesChane's opinion is erroneous.

■ The ALJ also rejected Ms. DesChane's opinion because "her opinion appears to be based on the claimant's subjective complaints, and he is not entirely credible." (Tr. 42.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001); *Fair*, 885 F.2d at 604. While the ALJ's negative credibility finding was not challenged by plaintiff and appears to be supported by substantial evidence, there is no evidence that Ms. DesChane's opinion is based entirely on plaintiff's subjective complaints. The record does not include Ms. DesChane's treatment notes or otherwise describe with specificity how she arrived at her opinion. It is reasonable to infer that after 34 treatment visits, Ms. DesChane's opinion was formed at least in part based on personal observations and interviews, and perhaps other factors as well. Substantial evidence does not support the ALJ's assertion that Ms. DesChane's opinion is based only on plaintiff's subjective complaints. The ALJ failed to cite a germane reason supported by substantial evidence for rejecting Ms. DesChane's opinion, and, as a result, the ALJ erred.

### 3. Dr. Bingham

■ Plaintiff argues the ALJ did not set forth specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Bingham, a treating physician. Dr. Bingham has been plaintiff's treating physician for more than 10 years. (Tr. 316.) He indicated that plaintiff's depression and anxiety created a marked limitation in plaintiff's ability to perform one or more basic work-related activities, and that plaintiff's chronic pain management and chronic lower back pain may create a moderate or significant interference with the ability to perform one or more basic work-related activities. (Tr. 315.) Dr. Bingham opined that plaintiff is limited to work that is "sedentary at best." Dr. Bingham also stated, "A combination of physical and psychological rehab will be necessary before patient will be able to pursue re-training and re-employment." (Tr. 316.)

The ALJ rejected Dr. Bingham's opinion for two reasons. First, the ALJ noted that there are "no indications that Dr. Bingham performed anything more than cursory physical examinations." (Tr. 41.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009); *Thomas*, 278 F.3d at 957. During plaintiff's June 2006 hospital stay, Dr. Bingham was directly involved with plaintiff's care. (Tr. 225–26.) Plaintiff had consults with specialists in rheumatology, critical care, cardiology, electrophysiology and neurology, which involved a number of objective tests. (Tr. 228–41.) Dr. Bingham ordered MRIs in March and August 2006 and reviewed an updated cardiology report in November 2006. (Tr. 392, 396, 318.) When plaintiff complained of arthralgias involving hands, knees and swelling, Dr. Bingham recorded results of a complete physical exam. (Tr. 439.) Many of plaintiff's visits to Dr. Bingham were for medication management. (Eg., Tr. 371, 373, 378.) Dr. Bingham initiated a number of evaluations by specialists to try to identify the source of plaintiff's pain complaints, including consultations with specialists in rheumatology, electrophysiology, gastroenterology and hepatology, respiratory problems and cardiology were ordered. (Tr. 528, 541, 542, 554.) The ALJ's implication that Dr. Bingham's opinion was not based on clini-

cal evidence is not accurate, thus the first reason for rejecting the opinion is not supported by substantial evidence.

Second, the ALJ rejected Dr. Bingham's opinion "in light of his sub-standard treatment of the claimant's pain complaints." The ALJ pointed out that Dr. Bingham did not recommend any treatment other than narcotic pain medication which, according to the ALJ, would have contributed to memory dysfunction, balance and equilibrium, and deconditioning/easy fatiguability. (Tr. 41.) The ALJ seems to suggest that the narcotic regimen prescribed by Dr. Bingham's was below the standard of care for physicians. As discussed above, it is not the ALJ's place to substitute his judgment for the judgment of a physician. *See Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir.1990). Numerous other physicians reviewed plaintiff's medical records and consulted with Dr. Bingham regarding plaintiff's diagnoses, medications, and treatment and, while some mention was made of high dosage of narcotics, no physician suggested Dr. Bingham's treatment was incorrect, inappropriate or "substandard." (Tr. 211, 222, 228, 232, 234, 238, 245, 361, 528, 538, 541, 542, 545, 559.) Additionally, Dr. Bingham encourage plaintiff to get counseling and ruled out surgery as other treatment options. (Tr. 386, 388.)

The record is also replete with Dr. Bingham's attempts to reduce plaintiff's dependence on narcotics. The first evidence from Dr. Bingham in the record dated January 11, 2005 indicates Dr. Bingham informed plaintiff he was taking more than the recommended amount of hydrocodone. (Tr. 390.) Dr. Bingham told plaintiff he was going through oxycodone faster than he would like in December 2005, and indicated he wanted plaintiff to consult with a psychiatrist regarding other options for treatment and pharmacologic consultation. (Tr. 378.) In April 2006, Dr. Bingham noted plaintiff was still using too much OxyContin and after consulting with another physician he wanted to start tapering. (Tr. 371.) In August 2006, Dr. Bingham told plaintiff his accelerated use of narcotic pain relievers was unacceptable. (Tr. 335.) In May 2007, Dr. Bingham noted fentanyl patches were not working as part of the narcotics taper. (Tr. 433.) By early 2008, plaintiff was "so far so good" with narcotic withdrawal and was doing quite well. (Tr. 496.) There is no evidence in the record, let alone substantial evidence, that Dr. Bingham's treatment was substandard. This reason is vague and unsupported by the evidence and does not constitute a specific, legitimate reason for rejecting Dr. Bingham's opinion.

**4. Remedy**

Plaintiff argues the opinions of Dr. Dalley, Ms. DesChane, and Dr. Bingham should be credited. There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995); *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989). Another approach is found in *McAllister v. Sullivan,* 888 F.2d 599 (9th Cir.1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir.2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan,* 917 F.2d 13, 15

(9th Cir.1990) (citing *McAllister* ); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir.1990). In this case, the evidence does not clearly indicate that plaintiff is disabled. Remand is appropriate so the ALJ can reevaluate the medical and psychological evidence and, if appropriate, provide the requisite specific and legitimate or germane reasons for disregarding the opinions

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. A remand is necessary for reevaluation of the opinion evidence. The ALJ should also consider the reports of Dr. Debra Brown which are part of the record on remand. The opinion of a medical or psychological expert may be helpful.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED.**